GARY RESTAINO
United States Attorney
District of Arizona
SHEILA PHILLIPS
Michigan State Bar No.P51656
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone:  602-514-7500
Email: sheila.phillips2@usdoj.gov
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-23-00818-PHX-DGC-001 |
|---|---|
| Plaintiff, | |
| vs. | **UNITED STATES' SENTENCING MEMORANDUM** |
| 1. Nicolas Carrillo, | |
| Defendant. | |

The United States request the Court sentence Defendant to 36 months' imprisonment followed by three years of supervised release.

I.    **Background**

On May 25, 2023, an indictment was filed in U.S. District Court, District of Arizona, charging Defendant with Count 1, Dealing Firearms without a License, in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D); and Counts 2 through 48: Material False Statement During the Purchase of a Firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2). PSR ¶ 1.  On February 22, 2024, Defendant pleaded guilty to Count 1 of the indictment admitting  he engaged in the business of dealing firearms without a license. (PSR ¶ 2.)  Between  January 13, 2021, and April 14, 2023, he bought and sold at least 78 firearms,  62 of which were  semi-automatic rifles highly sought after by the members of the Mexican drug cartels. PSR ¶¶ 18 and 19.  The number of firearms Defendant bought

and sold could be substantially higher because it does not include any private purchases of firearms, which remained outside of the Bureau of Alcohol, Tobacco, Firearms and Explosive's (ATF's) ability to track.  Moreover it does not include any firearms Defendant purchased after obtaining a permit to carry a concealed weapon (CCW) – which he obtained after being contacted by ATF regarding his illegal purchases and receiving a warning letter regarding selling firearms without a license, likely to avoid being detected. *See* (Doc. 70, Exhibit 1 ¶ 19, Bates  566-567).

ATF's investigation of Defendant began after a Confidential Informant (CS-1), who was involved with a group trafficking firearms to Mexico, indicated that he had made straw for the group in Mexico in the greater Phoenix metropolitan area.  CS-1 said the individuals in Mexico specifically instructed him to buy for certain persons in the Phoenix area and provide each the purchased firearm(s) to be transported into Mexico.  According to CI-1, Defendant was one of the persons for whom he/she made a straw purchase.  (Doc., 70, Exhibit 1 ¶ ¶ 6-8, Bates 563).

ATF agents reviewed all known ATF Form 4473s to determine that Defendant purchased 78 firearms from Federal Firearms Licensees (FFLs).  Multiple times, Defendant made purchases of the same rifles on the same date. Moreover, on some occasions, Defendant would purchase firearms from different FFLs on the same day.   All these facts, indicate firearms trafficking to a criminal enterprise. Based upon these receipts and calculations, Defendant paid over $74,000 in cash for these firearms. *See* Doc. 70*,* Exhibit 1 ¶ ¶ 29-48, Bates 569-574.  Despite having very limited income, also evidencing he was purchasing the firearms for criminal organizations who often pay upfront, likely including a Mexican drug cartel. *Id.*  Large cash payments are also indicative of purchases on behalf of criminal organizations. *Id.*

ATF agents seized Codefendant/girlfriend's phone when executing a search warrant on the couple's residence.   Text messages on her phone confirmed that Defendant purchased high-powered, semi-automatic rifles for persons in Mexico, organizing firearms

transport to Mexico, and likely crossed some of them into Mexico himself.  Evidence of his crossing firearms himself include a text message from his girlfriend, which is supported by a correlation of his known firearm purchases with his border crossing history as explained in detail below.  One text was about Defendant crossing a "girl", which is a likely reference to a firearm, from the border. In the text his girlfriend told her friend that he had done this before.  *See* text dated May 17, 202, recorded below.

Another text to his girlfriend indicates Defendant's use of other persons to cross his firearms into Mexico.  *See* April 13, 2022, text recorded below.  Defendant texted his girlfriend about a person who could no longer cross his "drakes", which ATF agents believe was another cloaked reference to firearms. PSR ¶¶ 16 and 17.  In other texts, his girlfriend repeatedly told Defendant to "be careful" or be "safe" when he met with "clients".  *Id*.  Her phone also contained pictures of Defendant and herself with firearms flaunting bundles of cash. PSR ¶ 15.

Some of the relevant text conversations, as follows [emphasis added]:

i.  **May 17, 2021**: Text between Codefendant (girlfriend) and one of her friends.

**CODEFENDANT**- I get his work takes up a lot of his time and last time I didn't hear from him was when I was in Vegas and he went **to go cross that fucking girl from the border** so I'm thinking he's either one some shit like that and doesn't wanna tell me till he does it. **Like last time**. OR he has another bitch. And keeping me in the dark.

**Friend**- But Mariana. If he's doing that. Crossing thing. That has nothing to do with being honest about where y'all started. Like the correlation is not existent. One does not interfere with the other. (Doc. 70, Exhibit 2, ROI 25).

ii.  **April 13, 2022:** Text about crossing "drakes".

**DEFENDANT**: Hows work babe

**CODEFENDANT**: Busy as hell

**DEFENDANT**: Me too. Stressing

**CODEFENDANT**: Why? Whats up?

**DEFENDANT**: **Money and the person who was going to cross my drakes can't anymore**.

**CODEFENDANT**: Oooo ok well that's something they need to figure out no? Instead of u stressing about it? Im home

**DEFENDANT**: I'm on the way to Mesa.

**DEFENDANT**: **Sent a picture of himself holding a stack of cash**.

(Doc. 70, Exhibit 2, ROI 25).

    iii. **May 18, 2022**: Text about money/profits involved.

**DEFENDANT**: you said, the gun store from Scottsdale called me

**CODEFENDANT**: dead ass lmao. And for what

**DEFENDANT**: They have a scar 17. For 3.5k. but that's a easy 6.5k.

**CODEFENDANT**: Sheeesh. You gonna get it?

**DEFENDANT**: I spent some money over the last days I gotta see if I got it. But sheshhhh that's a gooooooooooooooddd ticket. Remember it was 4.4k in another store.

**CODEFENDANT**: Yeah so its cheaper. You haven't got the 25k yet?

**DEFENDANT**: Dammmm foooo. Red flag. That's not sum to say over hereee. n stuff from the SW.

(Doc. 70, Exhibit 2, ROI 25).

    iv.    **June 27, 2022**: Text about Defendant's cartel association

**CODEFENDANT**: Babe. My manager todsay told me that on Saturday they got a call in Laveen. Saying that a cartel with a white truck was gonna shoot the place up if she didn't give her a first aid kit cuss I guess they had a man dying in the truck. And then today we got the call at 24th st.

**DEFENDANT**: Tell her I said no cartel gas a green light to do that here

**CODEFENDANT**: She's all panicking and I don't know what to do lol so **I just wanted to let you know just in case.** [Emphasis added].

**DEFENDANT**: And if anything happens to let me know I'll make some calle and handle

it.

**CODEFENDANT**: Ok…

**DEFENDANT**: It's just ppl that try scamming and using the cartel scare tactics. That's all ca. Cap. **We don't do that bb.** [Emphasis added]**.**

**CODEFENDANT**: Okay ill just chill.

(Doc. 70, Exhibit 2, ROI 25).

## II.    Sentencing Guidelines

The United States filed objections to the Presentence Investigation Report (PSR) asking for the 4-point enhancement for under   United States under USSG §2K2.1(b)(6)(A) based on Defendant's knowledge or reason to believe, some of the firearms he purchased would be transported outside the United States.   The Probation Officer agreed and revised the sentencing guideline calculations.

The United States agrees with the revised sentencing guideline range of 30 to 37 months based on an Offense Level of 19 and a Criminal History Category of I. PSR at 17. The Probation Officer recommends a sentence at the low-end of the range. *Id*.   The United States requests a sentence toward the high-end of that range for the reasons stated below.

## III.    United States Sentencing Recommendation

Defendant's conduct, which spanned at least 15 months, warrants a significant sentence and evidence his danger to the community. During that time he purchased at least 78 firearms, 63 of which were semi-automatic rifles, and spent over $74,000 in cash to purchase these weapons.  Unlike a straw purchaser, he organized not only the purchase but the illegal sale of these firearms.  Evidence exists that he also utilized straw purchasers like his girlfriend and CS-1.

Evidence further demonstrates that Defendant was: 1)  Making a substantial profit on his sale of  these high-powered, semi-automatic rifles, which is only possible if he was selling them to a criminal organization.  Persons who can buy the firearms legally and are not concerned with being identified by law enforcement, could buy each for thousands of

dollars less from an FFL (*See* Doc. 70, Exhibit 1 ¶ 40); 2) Organizing the transport of firearms into Mexico; and 3) He was associated with a drug cartel.

As indicated in the United States Objection to the Presentence Report (Doc. 70), Defendant traveled to Mexico five times between March and July 2022, and he made multiple border crossings in 2021. PSR ¶ 6. Defendant's border crossings coincided with several of his firearm purchases. On May 26, 2022, May 27, 2022, and June 1, 2022, Defendant purchased a total of five Century Arms AK-47 style, 7.62X39mm caliber rifles. (Doc. 70, Exhibit 1 ¶ 28).  On June 2, 2022, Defendant also purchased a FN, Five-Seven, .57cal from Bear Arms Firearm and Accessories in Scottsdale, Arizona, which later recovered in Nogales, Mexico on September 8, 2022, resulting in a time to crime of 129 days. (*Id* ¶ 20). Data obtained from Defendant's cell phone from a historic tracking warrant showed that his phone traveled to Nogales, Arizona on June 3, 2022. (*Id* ¶ 28).  Department of Homeland Security records show on June 7, 2022, Defendant crossed into the United States from Mexico. *Id*.  Later, on June 7, 2022, Defendant  again crossed into the United States from Mexico via the pedestrian lane. *Id.*

Under 18 U.S.C. §3553(a) calculous, a 36-month term of incarceration is sufficient but not greater than necessary. Particularly weighty factors include the nature and circumstances and the seriousness of Defendant's continuing offense conduct.  Through his conduct, Defendant has demonstrated disrespect for the law requiring a substantial sentence to afford adequate deterrence from future criminal conduct and violations of the terms of his future release, noting his use of marijuana while on pretrial release.  PSR ¶ 3.

IV.    **Conclusion**

For the above reasons, the United States respectfully requests the Court sentence Defendant to 36 months' imprisonment followed by three years of supervised release.

//

//

//

Respectfully submitted this 18th day of September 2024.

GARY RESTAINO
United States Attorney
District of Arizona

*s/Sheila Phillips*
SHEILA PHILLIPS
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Keilembo D. Ellison, Attorney for the Defendant.

_*Carlton Covington*_____
U.S. Attorney's Office